# OYER AND TERMINER.

## PHILADELPHIA, MAY, 1817.

The Com'th
vs.
*Lieut. Uriah P. Levy.*  } MISDEMEANOR.

*Rush*, President.

*Peter A. Brown, Esq.* Deputy Attorney General.
*Z. Phillips* and *T. Kittera, Esqs.* for the Defendant.

This was an indictment against the defendant for

PHILAD'A.
May, 1817.

The Com'th
v.
Levy.

having on the 27th day of May, 1816, sent a challenge to Peter Mierken Potter to fight a duel, contrary to the act of assembly of March 31st, 1806, entitled "An act to restrain the horrid practice of duelling."

Many curious and interesting points were made and decided in the course of the trial, which will be given in their order.

A jury being called into the box, the book was handed to one of them, (Richard Palmer, Esq.) who applied to the court to excuse him from serving as a juryman in this case, because he knew all about the case already, had conversed much on the subject, and had long ago made up his mind on it. The court referred the excuse to the attorney general and the defendant's counsel, both of whom refused to challenge the juror, and the court told him he must be sworn ; he had no right to challenge himself. The juror was sworn.

The father of the deceased, P. M. Potter, was called as a witness for the prosecution, and proved that a paper called a challenge was found by him in the pocket of his son, at the time that he was brought home wounded, after the duel had taken place.

It is the practice of the Court of Sessions of New York, where a juror appears by his own answer to be biassed or prejudiced, to set him aside without the formality of a challenge.

A witness was then called to prove the handwriting of the defendant, who stated that he had seen him write his name once, and *believed* the signature to the letter to be his handwriting.—The challenge itself was not in his handwriting.

*Peter A. Brown, Esq.* Attorney General, then proposed to read the challenge to the jury.

*Phillips* and *Kittera,* for the defendant, objected to

Where a juror has *ex-pressed* his sentiments as to the guilt or innocence of the prisoner, or has given vent to his feelings as to the result of the trial, he will be set aside by the court. 4 Harg. St. Tr. 748. Hawk. C. 2. c. 43 § 28. And a peer or lord of parliament may *challenge himself* on the trial of a commoner. Co. Lit. 156. Hawk. C. 2. c. 43. See post.

this, on the ground that there had been no legal proof of his handwriting. They contended that the mere *belief** of a witness, who had never seen the defendant write but once, was not sufficient to establish the signature to this letter to be his handwriting.*

*By the Court.—Rush,* president. There has been some evidence to prove that the signature to that paper is the handwriting of the defendant; whether that evidence is sufficient to establish the fact or not, is not a question to be decided by the court, but by the jury. They are the judges of the weight of the evidence, and will, we have no doubt, decide it correctly. We are of opinion that the paper must go to the jury.

The letter was then read. It was addressed to Mr. Potter, and complained of ungentlemanly conduct on his part towards the writer, at a ball on the preceding evening, and asked for an opportunity " to punish such ungentlemanly conduct in a gentlemanly way." There was nothing in it about fighting a duel, or the use of any deadly weapons.

The attorney general then offered evidence to prove that the defendant and Mr. Potter had met on the same day that the letter was dated, went into a boat together at the point-house, crossed over to Jersey, and there fought a duel, in which Mr. P. was severely wounded, and soon afterwards died of his wounds. This evidence was objected to by the defendant's counsel, and, after argument, the court said it could not be heard:

· 1st. Because the transaction did not take place in the county of Philadelphia, to which the jurisdiction of the court was limited; and,

· 2dly. Because it would be giving evidence of a greater crime, when the defendant was on his trial for a lesser

PHILAD'A,
May, 1817.

The Com'th
v.
Levy.

*There are a great number of cases wh're a witness need not swear *positive;* it is sufficient if he swears to the best of his *belief.* The opinion of eminent men in the sciences are instances: a physician in the case of murder, or an engraver in a case of forgery, respecting their opinion of the cause of death, and whether the instrument is a forgery or not. See 3 Willes, 427. 4 T. R. 498. 4 Esp. Rep. 117.

one. It would be giving evidence that the defendant had committed murder in the state of New Jersey, when he was only on his trial for having sent a challenge in the county of Philadelphia. The court said, however, that the attorney general might give evidence of that part of the transaction which took place in the county of Philadelphia.

The witnesses were called, and proved that the parties met at the point-house, and went in a boat together; that Lieut. Levy proposed to Mr. Potter to compromise their dispute, and said he would come upon any terms that a man of honour might come upon; but Mr. Potter said he would come upon no terms, but was determined to fight him.

The evidence on the part of the prosecution being closed, the defendant's counsel produced a volume of testimony to prove his amiable and inoffensive disposition, and his good conduct and excellent character both as a man and a soldier, and particularly his bravery and attention to duty in the action between the Argus and the Pelican, during the late war.

The evidence being closed on both sides, the defendant's counsel contended,

1st. That there was not sufficient evidence that the defendant ever signed a letter called a challenge.

2dly. That there was no evidence that the letter, if signed by him, was written or delivered in the city or county of Philadelphia. It was dated on board the Franklin 74, and there was no evidence that that ship lay within the county of Philadelphia at the time. The jury were bound to confine themselves to the evidence they had heard since they came into the box; they could not have found a verdict upon facts which they

PHILAD'A,
May, 1817.

The Com'th
v.
Levy.

of their own knowledge, much less upon the report of others before they were sworn.

3dly. That the letter, if signed by the defendant within the county of Philadelphia, did not amount to a challenge, within the meaning of the act of assembly. The act speaks of a challenge "to fight at sword, rapier, pistol, or any other deadly weapons," and there was not a word about deadly weapons in this letter. The letter speaks of settling a dispute in a gentlemanly manner. What the defendant meant by those words it was not for the jury to presume. They could only take the words of the letter, and compare them with the words of the act of assembly, and decide whether or not the defendant, if he had signed that letter, had brought himself within the letter of the law. The act of assembly, they said, was a highly penal statute, and the rule of law is, that penal statutes are to be construed strictly. The indictment could not be sustained unless the defendant had brought himself within the express words of the statute.

The attorney general replied with considerable argument in support of the prosecution, but with great liberality towards the defendant, and spoke of his character with great respect. He said that duelling was considered by some men as a horrid crime, while others looked upon it as an honourable way of settling disputes, one which no honourable man could refuse without an irreparable injury to his character and standing among his friends and associates. Of the latter description were the gentlemen with whom the defendant's official situation as an officer of the navy required him to associate. Whether duelling was honourable or criminal he was not prepared to say, nor was it necessary he should give any opinion on the subject at present; it was sufficient for him that the law made

PHILAD'A,
May, 1817.

The Com'th
v.
Levy.

it an indictable offence to send a challenge to fight a duel, by which it became his duty, as attorney general, to prosecute it as a crime.

*Judge Rush*, in his charge to the jury, told them, that in the opinion of the court, the only doubtful point in the cause was the want of satisfactory proof of the defendant's handwriting to the challenge. The evidence was not as conclusive as the court could wish; the jury were the sole judges, and would weigh it impartially, and decide as they thought right.

As to the question of the letter having been written in the county of Philadelphia, there could be no difficulty about it. It was dated on board of the Franklin 74, and it is a fact known to all the jurymen, that that ship had been built in the county of Philadelphia, and had never yet been out of it, being at this moment in the stream opposite to the navy yard, and near to the Pennsylvania shore. The jury, he said, were not bound to shut their eyes against facts that are known to all mankind. Men are not to take leave of their senses because they are sworn as jurymen.

As to the language of the letter not coming within the words of the act of assembly, it could not save the defendant. If the construction of the act, which the defendant's counsel have contended for, were to prevail, it would destroy it altogether, and completely defeat the intention of the legislature. The intention of the law was to prevent duelling; but if their construction of it be correct, it will not produce that effect at all. What do all duellists say in their challenges? Why, they inform the opposite party that they consider themselves as having been injured or insulted by him, and they expect the satisfaction of a gentleman. Now what does this

mean? Every body knows that it means, I challenge <span>PHILAD'A,<br>May, 1817.</span>
you to fight a duel with me with deadly weapons. No
man would be such a fool as to send a challenge in the <span>The Com'th</span>
words of the act of assembly. <span>v.<br>Levy.</span>

The jury went out and returned in about ten minutes
with a verdict of *Not Guilty*.